UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY JUNIOR FERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.: 1:19-cv-0634 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ROY JUNIOR FERNANDEZ, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Roy Junior Fernandez asserts he is entitled to disability insurance benefits, a period of disability, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record, including opinions of two treating physicians. For the reasons set forth below, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In April 2015, Plaintiff filed his applications for benefits, alleging he came disabled in January 2012 due left ankle damage, swelling in his left ankle, pain in the left foot, and lower back pain. (Doc. 10-6 at 2; Doc. 10-7 at 6) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-4) Plaintiff requested an administrative hearing on the application and testified before an ALJ on February 16, 2018. (*See* Doc. 10-3 at 23, 40) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on May 21, 2018. (*Id.* at

23-34) Plaintiff requested review of the decision with the Appeals Council, which denied the request on March 6, 2019. (*Id.* at 9-11) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date January 15, 2012. (Doc. 10-3 at 25) Second, the ALJ found Plaintiff's severe impairments included: "left ankle status post ligament repair; and degenerative disc disease of the lumbar and thoracic spines." (*Id.*) At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 25-26) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6 hours in an 8-hour workday. He is able to frequently climb ramps and stairs, but is precluded from climbing ladders, ropes, or scaffolds. The claimant is capable of occasionally balancing, stooping, kneeling, crouching and crawling.

(*Id.* at 26) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "unable to perform any past relevant work." (*Id.* at 32) However, at step five the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform," such as cashier, fast food worker, and cleaner. (*Id.* at 32-33) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 33)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence, by "rejecting the opinions of Plaintiff's treating physicians and then substituting her own lay opinions of Plaintiff's impairments and residual functional capacity." (Doc. 13 at 15) The Commissioner argues that "[s]ubstantial evidence supports the ALJ's evaluation of the medical opinions." (Doc. 14 at 10, emphasis omitted)

**A.     Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Finally, an ALJ must consider opinions of other medical professionals who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1).

A medical opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830. When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting the limitations identified by his treating physicians, Drs. Zhang and Nomicos. (Doc. 13 at 15-19) Because these medical opinions were contradicted by the opinions of other physicians—including the examining and non-examining physicians— the ALJ was required to identify specific and legitimate reasons for rejecting the treating physician's opinions. *See Lester*, 81 F.3d at 831.

///

       1.       Opinion of Dr. Nicholas Nomicos

Dr. Nomicos, a physician at Camarena Health, treated Plaintiff for eight months prior to completing a "Physical Medical Source Statement" on July 12, 2016. (Doc. 10-14 at 60-61) He noted that he saw Plaintiff every two to three months. (*Id.* at 60) According to Dr. Nomicos, Plaintiff's diagnoses included lumbar/thoracic disc herniation, depression, and anxiety. (*Id.*) He noted Plaintiff reported chronic ankle pain and back pain, which were being treated with pain medication and a muscle relaxer, and "manag[ed] by Pain Management." (*Id.*) He attributed Plaintiff's depression to "family issues," and believed work may "help [him] improve or distress." (*Id.* at 61) Dr. Nomicos believed Plaintiff walk three blocks without severe pain or needing rest, sit for more than 2 hours at one time, and stand for 2 hours at one time. (*Id.* at 60) He also indicated Plaintiff could stand/walk "less than 2 hours" and sit "about 4 hours" in an 8-hour day. (*Id.*) Dr. Nomicos opined Plaintiff needed to be able to "shift[] positions at will from sitting, standing or walking" and would take unscheduled rest breaks "every 2-3 hours." (*Id.*) Dr. Nomicos indicated Plaintiff could lift and carry less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely. (*Id.* at 61) In addition, he believed Plaintiff could occasionally stoop and climb stairs; rarely climb ladders; frequently crouch and squat; and never twist. (*Id.*) Dr. Nomicos believed work may "help [Plaintiff] improve or distress." (*Id.*) Further, he noted that Plaintiff could "be retrained in [a] different occupation that does not require physical limitations and allows him to work." (*Id.*)

After summarizing the limitations identified by Dr. Nomicos, the ALJ stated: "Little weight is given to this opinion." (Doc. 10-3 at 29) The ALJ explained:

> The opinion is internally inconsistent. For example, he stated that the claimant could stand for 2 hours, but stand/walk for less than 2 hours. Dr. Nomicos overestimated the claimant's limitations with relation to the minimal findings during clinical examinations and imaging tests (Exhibits 1F, p. 83; 4F; 5F, pp. 11, 14, 16, 18, 20; 6F, pp. 2-3; 10F, p. 4; 14F, p. 7; 15F, pp. 2, 11). The doctor gave the claimant very restrictive limitations, yet said he could be trained in a different position, that would allow him to work. Furthermore, this opinion regarding his ability to work or be a good candidate for vocational training is ether reserved to the Commissioner, or outside his area of expertise. The limitations are unsupported by his treatment history or medical records. The doctor said he had seen the claimant every 2-3 months for the last 8 months. This means that, at most, Dr. Nomicos saw the claimant four times.

(*Id.*) Plaintiff argues the reasons identified by the ALJ are not "specific and legitimate" and, as a result, the ALJ erred in rejecting limitations identified by Dr. Nomicos. (Doc. 13 at 16-17)

        *a.*        *Issue reserved for the Commissioner*

The ALJ indicates little weight was given to the opinion of Dr. Nomicos because Dr. Nomicos opined Plaintiff "could be trained in a different position, that would allow him to work" and "this opinion regarding his ability to work or be a good candidate for vocational training is ether reserved to the Commissioner, or outside his area of expertise." (Doc. 10-3 at 29)

The determination of whether a claimant is able to work is reserved for the Commissioner, and statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion"). Thus, an ALJ is not required "to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)).

Dr. Nomicos suggested Plaintiff could not currently work, by stating he could "be retrained in [a] different occupation that … allows him to work." (Doc. 10-14 at 61) Because this statement could "direct the determination or decision of disability," the ALJ was entitled to reject the opinion. *See 20 C.F.R. §§ 404.1527(e), 416.927(e); Martinez*, 261 Fed. App'x at 35; *James*, 2012 U.S. Dist. LEXIS 139929, at *25. However, this reason does not support the ALJ's decision to give little weight to the specific limitations identified by Dr. Nomicos in the Physical Medical Source Statement.

        *b.*        *Internal inconsistency*

Internal inconsistencies in a physician's report may provide a basis for exclusion of that opinion. *See Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting various statements by treating physician because they were internally inconsistent); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining inconsistencies within a report supports the decision to discount the opinion of a physician); *Gabor v. Barnhart*, 221 Fed. App'x 548, 550 (9th Cir. 2007) (finding "internal inconsistencies" in physician's report provided an additional basis

1 to exclude that medical opinion).

2 The ALJ found Dr. Nomicos' was "internally inconsistent" because "he stated that the claimant could stand for 2 hours [at one time], but stand/walk for less than 2 hours" in an eight-hour working day. (Doc. 10-3 at 29) The ALJ fails to explain how this inconsistency is material or resolve the ambiguity in Plaintiff's limitations with standing and walking. *See Morgan*, 169 F.3d at 603 (noting the ALJ has a responsibility to determine "whether inconsistencies are material (or are in fact inconsistencies at all)" in physician's report, as well as to resolve a conflict and ambiguity). Indeed, the findings from Dr. Nomicos could be reconciled to indicate Plaintiff could stand and walk for two hours, or less, in an eight-hour day. However, the ALJ made no effort to resolve the ambiguity in the questionnaire yet concluded Plaintiff could "stand and walk 6 hours in an 8-hour workday." (*See* Doc. 10-3 at 26)

Because the ALJ did not explain how the identified inconsistency was material— or attempt to reconcile the statements— the inconsistency cannot support the ALJ's decision to completely reject opinions related to Plaintiff's ability to stand and walk. *See Cardenas v. Comm'r of Soc. Sec.*, (finding "the ALJ erred by failing to resolve the internal inconsistency in [the physician's] reports"). Further, the inconsistency identified by the ALJ does not address the remaining findings of Dr. Nomicos related to Plaintiff's postural limitations, ability to sit, lifting and carrying restrictions, or his need to be able to shift positions at will. Consequently, the internal inconsistency is not a specific and legitimate reason to give less weight to the opinions of Dr. Nomicos.

    *c. Treatment notes and record*

The Ninth Circuit explained the opinion of a treating physician may be rejected when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may also reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2003)). However, to reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).

When an ALJ believes the treating physician's opinion is unsupported by the objective medical

evidence, the ALJ is required to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ indicated the conclusions of Dr. Nomicos were inconsistent with "minimal findings during clinical examinations and imaging tests." (Doc. 10-3 at 29, citing Exhibits 1F, p. 83; 4F; 5F, pp. 11, 14, 16, 18, 20; 6F, pp. 2-3; 10F, p. 4; 14F, p. 7; 15F, pp. 2, 11)  Although the ALJ clearly cited to several pages of medical records, the ALJ failed to identify the specific findings in the record that she believed conflicted with the limitations identified by Dr. Nomicos.  For example, Exhibit 1F page 83 addresses a series of left ankle x-rays, which showed "evidence of post traumatic arthritis, particularly in the talo-fibular joint." (Doc. 10-9 at 3) In addition, the records include the following diagnoses: "[s]tatus post left ankle arthroscopic debridement with left peroneal tendon synovectomy and left ankle collateral ligament secondary repair," "[t]horacolumbar contusion/strain with reinjury" and "T9-T12 dysfunction." (*Id.*)  The Court is unable to speculate as to how these findings and diagnoses conflict with the limitations identified by Dr. Nomicos.

Likewise, the ALJ cited the entirety of Exhibit 4 to support her conclusion, which contains the consultative examination findings and opinions from Dr. Tomas Rios.  (*See* Doc. 10-3 at 29; Doc. 10-14 at 21-26) Again, the ALJ failed to identify specific conflicts between the findings of Dr. Rios and the limitations identified by Dr. Nomicos, instead only offering her conclusion that there is a conflict. However, to reject the opinion of Dr. Nomicos as inconsistent with the findings of Dr. Rios, the ALJ must do more than offer the conclusion that there is a conflict. *See Embrey*, 849 F.2d at 421; *see also Creech*, 612 Fed. App'x at 481.  The ALJ's citation to the entirety of the consultative report "does not achieve the level of specificity [that] prior cases have required." *Embrey*, 849 F.2d at 421-22.

The ALJ also fails to identify clinical findings in treatment record—including the cited pages— to support her conclusion.  For example, the ALJ referred to Exhibit 5F, page 14, and this note includes

observations that Plaintiff's motor strength, gait, stance, and deep tendon reflexes were normal. (Doc. 10-14 at 39)  However, the same treatment note indicates Plaintiff had a positive straight leg raise test and exhibited tenderness in the low back, "on palpation of the ankles with movement of the ankle (eversion, inversion, dorsal/plantar flexion)," and in the ankles on ambulation. (*Id.*) Similarly, though the ALJ cited Exhibit 10F, page 4, this note from Dr. Kang includes findings that Plaintiff exhibited a positive straight leg raising test, decreased ability to squat, decreased active range of the lumbosacral spine, and instability while standing in the heel position.  (Doc. 10-14 at 58) The ALJ also failed to address the treatment records that indicated Plaintiff had "joint tenderness and decreased [range of motion]" during musculoskeletal examinations.  (*See, e.g.*, Doc. 10-17 at 11, 16, 20)

Because the ALJ failed to identify the specific evidence that conflicted with the limitations identified by Dr. Nomicos, or to resolve the conflict, the ALJ erred in evaluating the medical record. The ALJ also erred by citing broadly to the treatment notes, which included positive straight leg raise tests and findings regarding Plaintiff's decreased range of motion.  Thus, the ALJ erred in evaluating the limitations identified by Dr. Nomicos.  *See, e.g., Embrey,* 849 F.2d at 421-22; *Wilson v. Colvin*, 2016 U.S. Dist. LEXIS 28128 at *20 (N.D. Cal. Mar. 3, 2016) (finding the ALJ erred where she "did not identify the specific conflicting clinical evidence she relied on, and referred only to the treatment records, imaging studies, clinical findings and lab findings generally").

### d. Treatment history

The ALJ also gave less weight to Dr. Nomicos' assessment because "he had seen the claimant every 2-3 months for the last 8 months," which "means that, at most, Dr. Nomicos saw the claimant four times." (Doc. 10-3 at 29)

An ALJ may consider the length and frequency of treatment in evaluating what weight to give the opinion of a treating physician. 20 C.F.R. § 404.1527(c)(2)(i); *see also Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion).  Thus, the number of visits with Dr. Nomicos was proper for the ALJ to consider.  However, a limited treatment relationship cannot alone support the rejection of a physician's opinion.  *Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D. Cal. Mar. 6, 2017); *see also Chapo v. Astrue,* 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that a limited treating relationship may

be a valid reason for not according a giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them"). Thus, the Court is unable to find that this factor, standing alone, supports the rejection of the limitations identified by Dr. Nomicos.

### 2. Opinion of Dr. Steve Zhang

Dr. Zhang completed a Physical Medical Source Statement and Mental Residual Functional Capacity Questionnaire in December 2017. (Doc. 10-17 at 75-81) Dr. Zhang noted he saw Plaintiff "[e]very 1-2 months," treating Plaintiff for herniated discs in the cervical and lumbar spine and bilateral sacroiliitis. (*Id.* at 75) He noted Plaintiff's symptoms included radiating leg pain and weakness, foot drop, pain on flexion, numbness and tingling in the lower extremities, and muscle spasm. (*Id.*) According to Dr. Zhang, his "clinical findings and objective signs" included: "Muscle weakness on hip flexion, knee flexion/extension, numbness/tingling on palpation." (*Id.*) Dr. Zhang believed Plaintiff could walk 1-2 blocks without sever pain; sit and stand for 15 minutes at one time, or about two hours in an eight-hour day; and needed to be able to shift positions at will from sitting, standing, or walking. (*Id.* at 75-76) Dr. Zhang opined Plaintiff could lift and carry less than 10 pounds occasionally and never 10 pounds or more; and rarely twist, crouch, squat, or climb. (*Id.* at 77) Dr. Zhang believed Plaintiff also suffered from depression and the physical demands of work "could be stressful." (*Id.* at 75, 78) He indicated Plaintiff would be precluded from 15% or more of a workday with understanding, remembering, and carrying out short and simple instructions; and 10% or more of a workday Plaintiff was precluded from maintaining an ordinary routine, completing a normal workday, and all areas of adaption. (*Id.* at 79-80) Dr. Zhang also completed a CalWORKS form for Merced County indicating Plaintiff was physically/mentally incapacitated and not employable. (*Id.* at 83)

The ALJ indicated "little weight" was given to the Physical Medical Source Statement, Mental Residual Functional Capacity Questionnaire, and CalWORKS form. (Doc. 10-3 at 29-30) The ALJ indicated the physical limitations were rejected because "[t]he doctor had only seen the claimant for 2 months, and his records did not contain any radiological work, nor adequate medical signs or laboratory findings with which to support the extreme limitations." (*Id.* at 30) Furthermore, the ALJ stated she rejected the mental limitations because Dr. Zhang was "not a mental health specialist." (*Id.*) Plaintiff argues these were not specific and legitimate reasons for rejecting the opinions. (Doc. 13 at 17)

        *a.*      *Length of Treatment*

As explained above, the frequency and duration of treatment from a physician is a relevant factor for the ALJ to consider. 20 C.F.R. § 404.1527(c)(2)(i); *Benton*, 331 F.3d at 1038-39. Notably, although the ALJ indicated Plaintiff saw Dr. Zhang for only two months, the record reveals Dr. Zhang began treating Plaintiff when he moved to Merced, approximately four months prior to the evaluation forms being completed. (*See* Doc. 10-7 at 71) Thus, the length of the relationship was not as short as the ALJ indicated.

Regardless, the Court must determine whether the ALJ identified other specific, legitimate reasons for rejecting the physical limitations identified by Dr. Zhang, as the length of the treatment alone cannot support the decision to reject his opinions. *See Chapo,* 682 F.3d at 1291; *Rodriguez*, 2017 WL 896304 at *10.

        *b.*      *Objective medical evidence*

In a Social Security Ruling, the Commissioner explained the opinion of a physician is not entitled to controlling weight when the "opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 SSR LEXIS 9 at *9.[1] Consequently, the Ninth Circuit determined the opinion of a treating physician may be rejected when it is "conclusory and brief" and lacks the support of "objective medical signs and findings." *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"); *Crane v. Shalala*, 76 F.3d 251, 253(9th Cir. 1996) ("[t]he ALJ permissibly rejected... reports that did not contain any explanation of the bases of their conclusion").

According to the ALJ, Dr. Zhang's "records did not contain any radiological work, nor adequate medical signs or laboratory findings with which to support the extreme limitations." (Doc. 10-3 at 30) However, the record does not support the ALJ's statement that the physician did not possess radiological work, because Dr. Zhang noted that Plaintiff had an MRI "showing disc herniation at T7-

---

[1] Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

T8, L3-L4, L4-L5, [and] L5-S1 with foraminal stenosis." (Doc. 10-17 at 71) In addition, in the Physical Medical Source Statement, Dr. Zhang indicated "clinical findings and objective signs" included: "Muscle weakness on hip flexion, knee flexion/extension, numbness/tingling on palpation." (*Id.* at 75)  This is statement is supported by the treatment notes, which indicated Plaintiff's muscle strength [was] diminished +3/5" in his bilateral legs, and his "sensation [was] unequal where his right [lower extremity] feels less sensation than the left." (*Id.* at 72) Furthermore, Dr. Zhang found Plaintiff exhibited a "restricted" range of motion with lumbar rotation, sidebending, and flexion.  (*Id.*)

Significantly, the ALJ did not acknowledge the specific findings identified by Dr. Zhang in his statement or the treatment notes or explain why these signs and laboratory findings did not support the limitations identified by Dr. Zhang.  Consequently, the ALJ erred in rejecting the physical limitations identified by Dr. Zhang on these grounds. *See Reddick*, 157 F.3d at 725; *Embrey*, 849 F.2d at 421 (the "ALJ must do more than offer [her] conclusions").

       *c.*  *Mental health specialist*

The ALJ noted Dr. Zhang completed a mental residual functional capacity assessment but gave it little weight because Dr. Zhang "is not a mental health specialist." (Doc. 10-3 at 30) However, the Ninth Circuit has rejected the assumption that evidence of mental impairment must be offered by psychiatrist, as under general principles of evidence law, a primary care physician was qualified to give medical opinion on mental state. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Thus, this was not a specific, legitimate reason for giving less weight to the mental residual functional capacity assessment completed by Dr. Zhang.

**B.**  **Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

>disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating the opinions of Plaintiff's treating physicians and failed to identify specific and legitimate reasons to reject the limitations identified.  In addition, the ALJ failed to resolve conflicts in the medical record. These errors are not "inconsequential to the ultimate nondisability determination," because the physicians identified limitations that were not incorporated into the residual functional capacity assessment, such as a need to shift positions at will and additional postural limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Thus, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ failed to identify specific, legitimate reasons for rejecting the opinions of Plaintiff's treating physicians.  Because the ALJ did not apply the proper legal standards in evaluating the medical opinions, the administrative decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Roy Junior Fernandez, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 28, 2020**                   /s/ Jennifer L. Thurston
                                             UNITED STATES MAGISTRATE JUDGE